UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JASON FOX and CHRISTINA FOX,

    Plaintiffs,

v.                                          Case No: 8:16-cv-2665-T-23JSS

SAFECO INSURANCE COMPANY OF
ILLINOIS,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Defendant's Motion in Limine to Exclude the Testimony of Plaintiffs' Experts, Michael Shahnasarian, Ph.D. and F. A. Raffa, Ph.D. ("Motion") (Dkt. 68) and Plaintiffs' response in opposition (Dkt. 80). Upon consideration, it is recommended that Defendant's Motion be denied.

## BACKGROUND

Plaintiffs sued Defendant asserting underinsured motorist and consortium claims arising out of a June 9, 2015, automobile accident involving Plaintiff Jason Fox. (Dkt. 55.) As a result of the accident, Mr. Fox is claiming multiple injuries, including a brain injury. (Dkt. 80 at 2.) Mr. Fox contends that his cognitive difficulties after the accident have affected his skills as an attorney. (Dkt. 80 at 2–3.) During the course of litigation, Plaintiffs retained Dr. Michael Shahnasarian as a vocational rehabilitation expert to determine Mr. Fox's lost earning capacity. (Dkt. 80 at 3.)

In analyzing Mr. Fox's lost earning capacity, Dr. Shahnasarian interviewed Mr. Fox multiples times and conducted tests to assess his abilities, reviewed Mr. Fox's vocational, earning, and medical history, and interviewed Mr. Fox's partner at his law firm, Geoff Bichler. (Dkts. 68-1 at 4, 30; 80 at 3–4.) Based on his analysis, Dr. Shahnasarian concluded that Mr. Fox's injuries

from the accident have diminished his productivity. (Dkts. 68-1 at 28–30; 80 at 4–5.) Further, during Mr. Bichler's interview with Dr. Shahnasarian, Mr. Bichler estimated that Mr. Fox's annual earnings as a partner at their law firm should be approximately $350,000 to $400,000 with annual billings of approximately $1,000,000. (*Id.*) Dr. Shahnasarian reports that Mr. Fox's 2016 productivity was less than half of this expectation. (Dkts. 68-1 at 16; 80 at 5.) In his report, Dr. Shahnasarian concludes that "accident-related problems have caused Mr. Fox to sustain a 50% loss of earning capacity." (Dkt. 68-1 at 30–31.)

In its Motion, Defendant challenges Dr. Shahnasarian's opinions under Federal Rule of Evidence 702. (Dkt. 68.) Defendant argues that his opinions are unsupported, speculative, and unreliable, and should therefore be excluded from evidence. (Dkt. 68 at 2.) Specifically, Defendant contends that Dr. Shahnasarian's opinions are speculative because he failed to take into consideration the differences between Mr. Fox's work at his current firm and the firm he worked at one week prior to the accident. (Dkt. 68 at 14, 16.) Defendant asserts that Dr. Shahnasarian's opinions are also inadmissible because he failed to analyze alternative employment for Mr. Fox. (*Id.*) Defendant further argues that Dr. Shahnasarian's opinions are not based on any physical or mental deficit of Mr. Fox and that, to the contrary, Plaintiffs' physician Dr. Hoffman opined that Mr. Fox is competent in his current condition to work as an attorney. (Dkt. 68 at 14–15.) Defendant also points out that Mr. Fox has not sought mental health treatment, thereby failing to mitigate his damages. (Dkt. 68 at 15.)

Defendant contends that Plaintiffs' expert economist, Dr. Raffa, should be excluded as well because his opinions are based partly on those of Dr. Shahnasarian. (Dkt. 68 at 3.) Defendant claims that the experts' opinions fail to assist the trier of fact as the opinions are not sufficiently detailed to allow the jury to quantify the loss of earning capacity. (Dkt. 68 at 19.)

In response, Plaintiffs contend that Defendant's arguments bear on the weight the jury should ascribe, not admissibility of Dr. Shahnasarian's opinions. (Dkt. 80 at 1.) Plaintiffs assert that Dr. Shahnasarian's opinions are reliable because they are based on his thorough investigation, record review, and accepted principles in vocational rehabilitation. (Dkt. 80 at 15–18.) Plaintiffs contend that Defendant has not provided any evidence that Dr. Shahnasarian's methodology is inadequate and that his opinions are not based on speculation, but rather on the interviews he conducted and records he reviewed. (Dkt. 80 at 17–18.) Last, Plaintiffs argue that Dr. Shahnasarian's opinions may assist the jury in quantifying Mr. Fox's lost earning capacity. (Dkt. 80 at 19.)

## APPLICABLE STANDARDS

Pursuant to Federal Rule of Evidence 702, a witness who is qualified as an expert may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In determining the admissibility of expert testimony under Rule 702, courts must conduct a three-part inquiry considering whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005) (quoting *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)); *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002). In other words, the proponent of

the testimony must "demonstrate that the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact." *Tessier*, 402 F.3d at 1107. The district court has broad discretion in determining whether to admit or exclude expert testimony, and its decision will be disturbed on appeal only if it is manifestly erroneous. *Evans v. Mathis Funeral Home, Inc.*, 996 F.2d 266, 268 (11th Cir. 1993).

## ANALYSIS

### A. Reliability of Opinions

Defendant first argues that Dr. Shahnasarian's opinions are unreliable. (Dkt. 68 at 3.) The burden of establishing the reliability of an expert's opinion is on the proponent of the expert. *Frazier*, 387 F.3d at 1260. The proponent need not prove that the opinion is correct, but the proponent must prove by a preponderance of evidence that the testimony is reliable. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999). "Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." *Frazier*, 387 F.3d at 1262. This analysis takes into consideration a number of factors, including: (1) whether the expert's methodology can be, and has been, tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method employed has a known or potential rate of error; and (4) whether the technique is generally accepted in the scientific community. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005); *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK, Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). These factors, however, are non-exhaustive. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999); *Rink*, 400 F.3d at 1292.

When assessing the reliability of an expert's opinion, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326

F.3d at 1341; *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001) ("A district court's gatekeeper role under *Daubert* is not intended to supplant the adversary system or the role of the jury." (internal quotation marks omitted)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

Arguments attacking the absence of specific factors considered in an expert's methodology often bear on the weight, not the reliability, of the methodology. *Holderbaum v. Corp.*, 13-24216-CIV, 2015 WL 12781271, at *9–10 (S.D. Fla. Aug. 19, 2015) (finding argument that vocational rehabilitation expert's testimony was unreliable as the expert did not consider specific information in her analysis bears on the weight, not admissibility, of the expert's opinion); *Gearding v. Bombardier, Inc.*, 8:01-CV-485-T-17EAJ, 2003 WL 25686838, at * 1–2 (M.D. Fla. June 11, 2003) (finding defendant's challenge to vocational rehabilitation expert on the basis that expert substituted own judgment in place of plaintiff's treating doctors bears on the weight of testimony). Such arguments are appropriate for cross-examination of the expert because "[t]he weight to be given to admissible expert testimony is a matter for the jury." *Seamon v. Remington Arms Co., LLC*, 813 F.3d 983, 990 (11th Cir. 2016).

Here, Dr. Shahnasarian opined that Mr. Fox's accident-related problems have caused him to sustain a 50% loss of earning capacity. (Dkt. 68-1 at 30–31.) In forming his opinion, Dr. Shahnasarian used the Vocational and Rehabilitation Assessment Model ("VRAM"). (Dkt. 80 at 16.) Plaintiffs assert that "Dr. Shahnasarian's methodology has been thoroughly tested and vetted by peer review and publication." (Dkt. 80 at 15.) Further, Dr. Shahnasarian states in his affidavit that his opinions are based on accepted, peer-reviewed methods. (Dkt. 80-3 at 1.) Attached to Dr.

Shahnasarian's affidavit is an excerpt of a vocational rehabilitation book explaining the VRAM, including its three steps of (1) records review and rehabilitation interview, (2) labor market research and inquiry, and (3) rehabilitation analysis and opinion formulation. (Dkt. 80-3 at 58–61.)

In the first step, the main factors to be considered include culture and socioeconomics, educational experiences, language skills, avocational activities, activities of daily living, behavioral health, past and present medical treatment, medical functional capacity, economic and earning history, current financial resources, job acquisition and maintenance skills, and past work experience. (Dkt. 80-3 at 59.) Here, Dr. Shahnasarian completed an extensive review of Mr. Fox's medical records, interviewed Mr. Fox, reviewed Mr. Fox's tax returns and Answers to Interrogatories, and performed his own testing of Mr. Fox, including the Beck Depression Inventory-II test and the Shipley Institute of Living Scale. (Dkt. 68-1.) In his report, Dr. Shahnasarian documented his findings of Mr. Fox's vocational activity, physical condition, medical information, activities of daily living, mental health, education, career development, medical diagnostic testing results, and his own testing on Mr. Fox. (*Id*.) Thus, Dr. Shahnasarian's report covers most, if not all, of the factors that may be considered in the first step of the VRAM.

The second step of the VRAM, or labor market research and inquiry, "involves joint analysis of pertinent labor market statistical information and labor market sampling." (Dkt. 80-3 at 59.) It appears Dr. Shahnasarian's labor market research consisted of his interview of Mr. Fox's coworker, Mr. Bichler. As a fellow partner at Mr. Fox's law firm, Mr. Bichler informed Dr. Shahnasarian that Mr. Fox's current annual earnings should be in the range of $350,000 to $400,000 with annual billings of approximately $1,000,000. (Dkt. 68-1 at 30.) He further indicated that Mr. Fox's 2016 productivity was approximately less than half of what was expected.

(*Id*.)  Defendant argues that Dr. Shahnasarian's opinion that Plaintiff's expected earnings would be $350,000 is not reasonably certain and is based on Plaintiff's unrealistic expectation.  (Dkt. 68 at 13.)  Defendant contends that "[w]ithout any sufficient earnings history with the Bichler firm, Dr. Shahnasarian's opinion is based upon a possibility, not a probability; and thus is pure speculation."  (*Id*.)  However, Dr. Shahnasarian based his opinion on "all of the documents and interviews," including his discussion with Mr. Bichler and a review of Plaintiff's wages before and after the accident, not solely Plaintiff's expectations.  (Dkts. 68-1 at 16, 30–31; 80 at 5.)  Although this is a small sample, it is nonetheless a sample of the labor market Dr. Shahnasarian used in his analysis.  Defendant's argument that Dr. Shahnasarian's conclusions are based on incorrect assumptions bears on the weight and persuasiveness of the opinion, not its admissibility.  *See Rosenfeld v. Oceania Cruises, Inc*., 654 F.3d 1190, 1194 (11th Cir. 2011) (finding argument that expert relied on incorrect assumptions and his conclusions were imprecise bears on the weight, not reliability, of expert's opinion); *Skye v. Maersk Line Ltd. Corp*., 11-21589-CIV, 2012 WL 1252523, at *5 (S.D. Fla. Apr. 13, 2012) ("Simply because [defendant] believes that other record evidence is more reliable than the evidence relied upon by [plaintiff's expert] does not render the opinion unreliable.").  Defendant may explore this argument on cross-examination and present contrary evidence to support its argument.  *Id*.

In the third step of the VRAM, the vocational rehabilitation expert considers the first two steps in concert with established rehabilitation methods and protocols in order to develop an expert opinion.  (Dkt. 80-3 at 59.)  This analysis may include an opinion on wage earning capacity.  (Dkt. 80-3 at 60.)  In his report, Dr. Shahnasarian summarizes his findings from the first two steps of the VRAM and concludes that "within a reasonable degree of vocational rehabilitation probability,

accident-related problems have caused Mr. Fox to sustain a 50% loss of earning capacity. The estimate is conservative." (Dkt. 68-1 at 30–31.)

In its Motion, Defendant does not attack the VRAM methodology used by Dr. Shahnasarian but rather the evidence he relies upon in forming his opinions. First, Defendant contends that Dr. Shahnasarian has not analyzed alternative employment, as required by Florida law. (Dkt. 68 at 9, 16.) Defendant cites to the case *GEICO General Insurance Company v. Dixon*, 209 So. 3d 77 (Fla. 3d DCA 2017) for the proposition that alternative employment is required in determining future loss of earnings. Defendant's argument is misplaced. In *GEICO*, the court found the plaintiff's testimony regarding his future loss of earning capacity insufficient. *Id*. at 82. The plaintiff did not retain an expert and instead testified to his own experience in the field he planned on working in after retirement. *Id*. The plaintiff speculated how much he could earn and plaintiff's counsel suggested that plaintiff could earn this amount until he was sixty-six. *Id*. The court stated plaintiff "presented no concrete evidence demonstrating the availability of this type of job . . . or the pay being offered for such a position" and concluded that "without evidence of alternative employment" for the plaintiff, the jury was forced to engage in a future loss of earnings analysis. *Id*. The court did not make a finding that alternative employment is required in all determinations of future loss of earning capacity. Further, in contrast to the plaintiff in *GEICO*, Plaintiffs here are not relying on Mr. Fox's own testimony to determine his future lost earning capacity. Plaintiffs retained Dr. Shahnasarian, who then used the VRAM and information from Mr. Bichler to determine the amount Mr. Fox should be earning at his current firm.

Defendant next argues that Dr. Shahnasarian's opinions are not grounded in sufficient factual support. (Dkt. 68 at 12.) Defendant makes multiple allegations regarding the lack of sufficient detail in Dr. Shahnasarian's analysis. Similar to its argument regarding alternative

employment, Defendant argues that Dr. Shahnasarian fails to take into consideration the differences between the firm Mr. Fox worked at prior to the accident and the firm where he is currently employed, or the differences in Mr. Fox's responsibilities at the two firms. (Dkt. 68 at 14.) Defendant contends that with no analysis of the firms' expenses or profits, "there are too many variables between these two firms to provide a sufficient factual basis" for Dr. Shahnasarian's opinions. (*Id*.) Plaintiffs argue, and the Court agrees, that Defendant offers no evidence that this analysis is required for Dr. Shahnasarian's methodology to be reliable. (Dkt. 80 at 10.) Further, Dr. Shahnasarian specifically considered Mr. Fox's responsibilities at both firms, noting that Mr. Fox indicated he had the "same exact" responsibilities. (Dkt. 68-1 at 29.) These responsibilities include "cognitively complex" tasks such as multitasking, information processing, and analytical thinking. (*Id*.) Moreover, Defendant's arguments bear on the weight of Dr. Shahnasarian's opinion, and the weight given to expert testimony is a matter for the trier of fact. *See Quiet Tech*., 326 F.3d at 1341; *Holderbaum*, 13-24216-CIV, 2015 WL 12781271, at *9–10 (finding argument that vocational rehabilitation expert's testimony was unreliable as the expert did not consider specific information in her analysis bears on the weight of the opinion); *Gearding*, 8:01-CV-485-T-17EAJ, 2003 WL 25686838, at * 1–2 (finding whether vocational rehabilitation expert spoke with the plaintiff's treating doctors to establish functional limitations bears on the weight of the testimony).

Next, Defendant contends Plaintiffs have presented no evidence of any physical or mental restriction that adversely affects Mr. Fox's work as an attorney and, therefore, Dr. Shahnasarian's opinions are not based on any physical or mental deficit. (Dkt. 68 at 14.) Defendant argues that Mr. Fox's self-imposed limitation of lifting no more than twenty pounds is not an essential function to work as an attorney. (Dkt. 68 at 16.) Defendant also asserts that any opinion based on an alleged

mental deficit is contrary to the opinion of Mr. Fox's treating physician, and Plaintiffs' neuropsychological expert, Dr. Richard Hoffman. (Dkt. 68 at 15.) According to Defendant, Dr. Hoffman opined that Mr. Fox "is competent in his current condition to perform his work as an attorney, without restriction." (*Id*.) Defendant also takes issue with the fact that Mr. Fox has not participated in mental health treatment or physical therapy for his left wrist. (*Id*.) Defendant contends that Mr. Fox's alleged ameliorated condition, rather than his untreated condition, should serve as the basis for an opinion on his earning capacity because Mr. Fox refuses to mitigate his alleged conditions. (*Id*.) Defendant argues that this evidence leads to the conclusion that Mr. Fox's conditions are not affecting his capacity to work. (Dkt. 68 at 16.)

Again, Defendant's arguments bear on the weight of Dr. Shahnasarian's opinions and are not a proper basis to exclude Dr. Shahnasarian's testimony. *See Rosenfeld*, 654 F.3d at 1194 (finding argument that expert's conclusions were imprecise, unspecific, and based on incorrect assumptions bear on the weight and persuasiveness of the testimony); *Worley v. State Farm Mut. Auto. Ins. Co.*, 3:12-CV-1041-J-MCR, 2013 WL 6478297, at *3 (M.D. Fla. Dec. 10, 2013) (finding argument that expert's opinion was unreliable because it was "contrary to the facts" is not a proper basis for exclusion and, instead, should be explored during cross examination); *see also Seamon v. Remington Arms Co.*, LLC, 813 F.3d 983, 988 (11th Cir. 2016) (quoting *Daubert*, 509 U.S. at 595) ("In assessing reliability, the court must focus 'solely on principles and methodology, not on the conclusions that they generate.'"). Defendant makes the conclusory statement that these issues "cannot be adequately addressed through cross-examination." (Dkt. 68 at 16.) The Court disagrees as these arguments are similar to those typically found appropriate for cross-examination. *See Rosenfeld*, 654 F.3d at 1194; *Quiet Tech.*, 326 F.3d at 1341; *Holderbaum*, 13-

24216-CIV, 2015 WL 12781271, at *9–10; *Gearding*, 8:01-CV-485-T-17EAJ, 2003 WL 25686838, at * 1–2.

Further, despite Defendant's arguments, Plaintiffs have presented evidence of Mr. Fox's cognitive deficits. In his evaluation, Dr. Hoffman opined that as a result of a head injury from the accident, Mr. Fox sustained deficits in his cognitive processing speed which are "of particular concern for an attorney." (Dkt. 68-4 at 20.) Dr. Hoffman further opined that Mr. Fox's verbal memory and ability "to read, process, and remember verbal material effectively and efficiently. . . have clearly been impacted by his injuries." (*Id.*) In his report, Dr. Shahnasarian found that Mr. Fox's "accident-related injuries have compromised the volume of work he can perform" and, although he has been working more hours since the accident, "he remains unable to realize his pre-accident level of work productivity." (Dkt. 68-1 at 28–29.) Dr. Shahnasarian reviewed Dr. Hoffman's comprehensive neuropsychological evaluation of Mr. Fox, noting Dr. Hoffman's impressions of major neurocognitive disorder and psychological factors affecting other medical conditions. (Dkt. 68-1 at 26–27.) Dr. Shahnasarian further noted that his own testing of Mr. Fox was consistent with his clinical impression that Mr. Fox is suffering from severe depression. (Dkt. 68-1 at 29–30.) Contrary to Defendant's argument, Dr. Shahnasarian's opinions are not inconsistent with those of Dr. Hoffman's and are based on Mr. Fox's alleged cognitive deficits. However, it is not the Court's role to make conclusions regarding the persuasiveness of an expert's testimony. *Quiet Tech.*, 327 F.3d at 1341. Thus, Defendant may present evidence to counter Dr. Shahnasarian's opinions and can raise its arguments through cross-examination in order to allow the trier of fact to weigh the opinions.

Regarding Defendant's argument to exclude Dr. Raffa, its argument relies solely on the fact that Dr. Raffa used Dr. Shahnasarian's opinions to calculate Mr. Fox's future economic loss.

(Dkt. 68 at 4–5, 11–12.) As Defendant's arguments against Dr. Shahnasarian fail to warrant the exclusion of Dr. Shahnasarian's testimony, Defendant's argument regarding Dr. Raffa fails as well.

### B. Assistance to the Trier of Fact

Defendant contends that Dr. Shahnasarian's opinions fail to assist the trier of fact "as they are not sufficiently detailed to allow the jury to quantify the loss of earning capacity." (Dkt. 68 at 19.) Defendant does not make a separate argument specifically addressing why Dr. Shahnasarian's opinions do not assist the trier of fact. Rather, Defendant's argument on the third prong of the *Daubert* inquiry is directly tied to its arguments regarding reliability. (Dkt. 68.) As detailed above, these arguments bear on the weight of Dr. Shahnasarian's testimony, not admissibility.

With regard to whether the expert's testimony assists the trier of fact, helpful expert testimony "concerns matters that are beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262. Here, Mr. Fox's future earning capacity is at issue. As an experienced vocational rehabilitation expert, Dr. Shahnasarian has specialized knowledge in this area. (See dkts. 80 at 13–14; 80-2.) Thus, his testimony will assist the trier of fact with respect to the amount of damages it may award for Mr. Fox's alleged loss in future earnings. *See Worley*, 3:12-CV-1041-J-MCR, 2013 WL 6478297, at *3; *Gearding*, 8:01CV485T17EAJ, 2003 WL 25686838, at *2.

Accordingly, it is **RECOMMENDED** that Defendant's Motion in Limine to Exclude the

- 13 -

Testimony of Plaintiffs' Experts, Michael Shahnasarian, Ph.D. and F. A. Raffa, Ph.D. (Dkt. 68) be **DENIED**.

**IT IS SO REPORTED** in Tampa, Florida, on January 23, 2018.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Steven D. Merryday
Counsel of Record